UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



GERSON ARZU, LAWRENCE AUSTIN, JACKIE BARCLIFF, KHALIK BERRY, SHAKEIM BRUNSON, SHAKIN DESILVA, MICHAEL FENNELL, KEVIN GAMBLE, DIEGO GARCIA, GROVER GORBETT, CHRISTOPHER HARVIS, MOHAMMAD HOTAKI, EVANDER JONES, TYRESE JONES, DANIEL KELLY, ANTWON MCGOWAN, CLEVELAND MCNEILL, ARTIS MILLER, TYRESE MINTER, EARL MORGAN, JOSE MUNIZ DIN NO. 3492101228, JOSE MUNIZ DIN NO. 2412300799, RYAN PADIN, RAHEEM PATTERSON, LOEL PINNOCK, RICHARD QUINONES, DEVONTE REEVES, STEVEN RICHARDS, JORGE ROMERO, JOSHUA SANTIAGO, NORELL THOMAS, ALEX TLATELPA, NORRIS WHITE, MARTINEZ WOODS, LUKE WOOLFOLK

                      Plaintiffs,

-against-

THE CITY OF NEW YORK,

                      Defendant,

No. 24-CV-06058

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

Plaintiffs Gerson Arzu, Lawrence Austin, Jackie Barcliff, Khalik Berry, Shakeim Brunson, Shakim Desilva, Michael Fennell, Kevin Gamble, Diego Garcia, Grover Gorbett, Christopher Harvis, Mohammad Hotaki, Evander Jones, Tyrese Jones, Daniel Kelly, Antwon McGowan, Cleveland McNeill, Artis Miller, Tyrese Minter, Earl Morgan, Jose Muniz Din No. 3492101228, Jose Muniz Din No. 2412300799, Ryan Padin, Raheem Patterson, Loel Pinnock, Richard Quinones, Devonte Reeves, Steven Richards, Jorge Romero, Joshua Santiago, Norell

Thomas, Alex Tlatelpa, Norris White, Martinez Woods, and Luke Woolfolk ("Plaintiffs") bring this action under 42 U.S.C. § 1983 against defendant the City of New York ("Defendant"), alleging violations of their rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States and the Constitution of the State of New York. The Plaintiffs – inmates detained on Rikers Island – allege that their rights were violated because corrections officers failed to move the body of a deceased inmate out of their prison unit for six hours after it was discovered in his cell. Dkt. No. 1, at ¶ 68. The gravamen of their complaint is that the failure to remove Plaintiffs from the cellblock until the body could be moved caused them psychological distress, to which the City was deliberately indifferent. *Id.* at ¶¶73–75.

Defendant the City of New York moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6). Dkt. No. 10. That motion is GRANTED and the complaint against the City of New York is dismissed with prejudice.

## BACKGROUND

### I. THE PARTIES

Plaintiffs were detained in the Rikers Island Correctional Facility, GVRC 5A Unit ("Rikers") on July 23, 2023. The Complaint does not specify whether any or all of the Plaintiffs were awaiting trial or had already been convicted at the time of the relevant events. *See* Dkt. No. 1.

The City of New York ("Defendant") is a municipal entity created and authorized under the laws of the State of New York and is authorized by law to maintain the New York City

Department of Corrections ("DOC"), which acts as its agent in the area of corrections and for which Defendant is ultimately responsible. *Id.* at ¶ 45.

## II. STATEMENT OF FACTS

The following facts are taken from the Complaint. Dkt. No. 1. On the pending motion to dismiss, the Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob, Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allair Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

On July 23, 2023, Plaintiffs were held in the GRVC 5A Unit on Rikers Island, New York. Dkt. No. 1, at ¶¶ 10–44. In the early morning hours of that day, an inmate housed in that Unit hanged himself with a bedsheet. *Id.* at ¶ 52. Though it was standard protocol for a Corrections Officer to make rounds at night to check on the inmates, that protocol was not followed on this particular night or morning. *Id.* at ¶ 53. Other inmates in the cellblock allegedly discovered that the individual had hanged himself. *Id.* at ¶ 54.

The Chief Officer, assisted by two inmates, cut the body down and placed it on the floor of his cell. As so placed, the body was lying half inside and half outside the cell. *Id.* at ¶¶ 54–55. The task exposed the inmates who helped the Chief Officer to anguish; one of them vomited when he saw the deceased's face and neck. *Id.* at ¶ 57.

EMS arrived but failed to revive the individual. *Id.* at ¶ 60. Once EMS left, the body remained on the floor, in view of the Plaintiff inmates. In total, the body was within the view of the inmates in the cell block for about six hours. *Id.* at ¶ 69. During that time, individuals came to take photographs of the body. *Id.* ¶¶ 60–64.

The inmates "were in a state of panic" that the body was not removed; they asked to be removed from the cellblock. *Id.* at ¶¶ 61, 66. The Deputy Warden told the inmates that they could not be moved due to a staff shortage. *Id.* at ¶ 68. After six hours had passed, the Plaintiff inmates were finally removed from the cellblock and taken to the gym, where they spent a "couple of hours." *Id.* at ¶ 69. When they were returned to the cell block, the body was gone.

After the inmates returned from the gym, individuals from "mental health" came and held a group meeting and counseled inmates individually. *Id.* at ¶¶ 70–71. The individuals from "mental health" returned to the cellblock for approximately two weeks after the incident to counsel inmates about what had happened. *Id.* at ¶ 72. Various inmates reported suffering from "depression, nightmares, loss of appetite, and an inability to sleep." *Id.* at ¶ 74. An unspecified number of them were prescribed psychiatric medications and received psychiatric care. *Id.* at ¶¶ 73–74.

### III. PROCEDURAL HISTORY

Plaintiffs commenced this action on August 9, 2024. Dkt. No. 1. The only party sued was the City of New York; no individual corrections officers were named.

Defendant City filed a motion to dismiss the Complaint against it, on the grounds that Plaintiffs failed (1) to exhaust their administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. Section 1997(e)(a) ("PLRA"); (2) to state a claim that their constitutional rights were violated under Fed. R. Civ. P. 12(b)(6); and (3) to state a claim against the City of New York. Defs. City of New York Mem. Of Law in Supp. Of Mot. For Dismissal of Compl. ("NYC Br.")), Dkt. Nos. 10, 11. Plaintiffs oppose the motion. Dkt. No. 17.

# DISCUSSION

## A. LEGAL STANDARD

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve "facial plausibility," a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, the plaintiff must allege facts that "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Further, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

Additionally, "The Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (*quoting* Fed. R. Civ. P. 8(a)(2)). Complaints that rely on "group pleading" and "fail[] to differentiate" which defendant was involved in particular allegedly unlawful conduct do not state a claim. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). "It is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (quotation omitted). Federal Rule of Civil Procedure 8(a) "is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The court may consider the full text of documents that are cited in, incorporated by reference in, or "integral" to the complaint. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

### B. Failure to Exhaust Administrative Remedies

In 1996, Congress enacted the PLRA with the purpose of decreasing the number of inmate suits. *See Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); *see also Jones v. Bock*, 549 U.S. 199, 223 (2007). Before prisoners are permitted to bring an action for prison conditions pursuant to Section 1983, prisoners must exhaust their administrative remedies by following the complaint procedure adopted by the New York State Department of Corrections and Community Supervision ("DOCCS"). *Hudson v. City of New York*, 15 Civ. 4920 (PAC) (HBP), 2016 WL 3976399, at *2 (S.D.N.Y. June 23, 2016). The PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Each individual plaintiff must exhaust his own remedies prior to bringing a 1983 action based on prison conditions.

Exhaustion does not need to be pleaded in a complaint; failure to exhaust is a defense. *Jones*, 549 U.S. at 216; *see also Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301 (KMK), 2018 WL 1626175, at *9 (S.D.N.Y. Mar. 30, 2018) ("A plaintiff need not plead that . . . he did in fact exhaust [his] administrative remedies, because the '[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.'" (citing *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). Nonetheless, the City has moved, as it often does, for dismissal for failure to exhaust. Unfortunately, the City did not make a motion to dismiss for lack of jurisdiction due to failure to exhaust – a motion pursuant to Fed. R. Civ. P. 12(b)(1), which can be supported by a factual record. That record, without which the exhaustion issue cannot be decided, is within the City's control; it knows whether any or all of the Plaintiffs filed timely grievances and followed the grievance procedure through to the end. But those facts are not before the court.

Nor did the City support its Rule 12(b)(6) motion to dismiss with any evidence of non-exhaustion. Had it done so I could have converted that aspect of the motion to an early motion for summary judgment pursuant to Fed. R. Civ. P. Rule 56, giving Plaintiffs the opportunity (and the responsibility) to controvert any showing by the City that they had not exhausted. *See e.g.*, *Arnold v. Goetz*, 245 F. Supp. 2d 527, 541 (S.D.N.Y. 2003).

Instead, the Corporation Counsel argued that failure to exhaust was apparent from the face of the Complaint, given the timeline between the date of the incident, July 23, 2023, and the date Plaintiffs filed their Complaint, August 9, 2024. Dkt. No. 11, at 20–21. To which Plaintiffs correctly responded that the City, which has the initial burden to sustain the defense of non-exhaustion, failed to offer any evidence on the point. Dkt. No. 17, at 7.

My guess is that at least some, and quite possibly all, of the Plaintiffs did not in fact file a timely grievance or take all the appeals required by the Department of Corrections grievance procedure – otherwise I imagine that counsel for Plaintiffs would have attached proof of exhaustion to his response to the motion to dismiss. If I am correct, that would render this suit dismissible with prejudice and without leave to amend as to any such Plaintiff, since the time for filing a grievance has long since expired. However, that is just a guess. I have been given no evidence. And I most certainly do not agree with the Corporation Counsel's position that failure to exhaust is apparent from the face of the Complaint; in fact, that argument is utterly absurd.[1] I am thus constrained to deny the motion to dismiss on the ground of failure to exhaust.[2]

I note that the exhaustion requirement applies only to the federal claim pursuant to Section 1983, and would not require dismissal of any state law claims. However, Plaintiffs are advised that this court will not be exercising supplemental jurisdiction over any state law claim, as the federal claim asserted against the City is being dismissed on the merits.

---

[1] Corporation Counsel cites *Caraballo v. Dep't of Corr.*, No. 22-cv-00971 (JLR), 2022 WL 16555313, at *3 (S.D.N.Y. Oct. 31, 2022) to support this proposition. However, the plaintiff in that case filed his complaint just five days after the underlying event. *Id.* Given the length of time required to complete the grievance procedure, the court concluded that it was apparent from the face of the pleading that the petitioner had failed to exhaust prior to filing his complaint. *Id.* (citing *Price v. City of New York*, No. 11-cv-6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012). Here, Plaintiffs filed their Complaint over a year after the July 23, 2023 incident; it does not ordinarily take a year to complete the grievance process, so one cannot say that it is apparent from the swiftness with which the lawsuit was filed that the plaintiffs here failed to file grievances and take appropriate appeals.

[2] Because failure to exhaust would render futile any effort to amend the pleading, I would ordinarily deny this aspect of the City's motion without prejudice; and if Plaintiffs were to try to amend they would have to establish lack of futility by proving that they had in fact exhausted their administrative remedies. However, for the reasons discussed in this opinion, I can see no merits-based basis on which the Plaintiffs could successfully amend their complaint, against either the City or any as-yet-unnamed corrections official. Therefore there is no need to allow for the development of a record on the futility of amendment due to non-exhaustion.

### 2. The Complaint Is Dismissed for Failure to Allege a *Monell* Violation

Surprisingly, the only Defendant named in the instant complaint is the City of New York – no corrections officers or officials were named, even as "John Does." The city is sued under both federal and state law. .

But a municipality cannot be held liable on a theory of *respondeat superior* for the federal constitutional violations of its employees. *Monell v. Dep't of Social Servs*, 436 U.S. 658, 690–91 (1978). Rather, a municipality may only be held federally liable if violations were committed pursuant to an official policy or custom of the municipality. *Id*. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). "Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).

The complaint against the lone defendant named in this lawsuit must be dismissed because it fails, for two separate reasons, to allege a *Monell* violation against the City of New York.

    *(a)    No municipal policy or custom is alleged*

To the extent that the Complaint asserts claims against the City pursuant to Section 1983, it must be dismissed because no arguably plausible view of the facts suggests that what happened in the GRVC 5A Unit on July 23, 2023, was the result of any custom or policy of the City of

New York. Not a single fact is alleged tending to show that the City had any custom or policy of failing to remove prisoners from an area where they could see the dead body of another inmate, or that there was any arguable failure to train corrections officers about what to do under the uniquely unfortunate circumstances of this case.

Unique, one-time events of the sort we have here are simply not susceptible to *Monell* liability. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[] [that] can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985). It is hard to imagine a more "one off" set of facts than the facts in this case. Not a single fact is pleaded tending to show that the City had any policy about what to do with prisoners if they were in the presence of a dead body that could not be moved until an investigation was completed. Nor are facts alleged tending to show that the City had any policy about what to do with prisoners who were faced with looking at something disturbing – anything at all that might be disturbing. "[A] policymaker does not exhibit deliberate indifference for failing to train employees for rare or unforeseen events." *Wray v. City of New York*, 490 F.3d 189 at 196.

Therefore, Plaintiffs have not pleaded a *Monell* claim arising out of the failure to move them away from the cell block for a few hours – unpleasant though the situation undoubtedly was. *Id.*[3] The uniqueness of the situation is in and of itself dispositive of the motion to dismiss.

---

[3] Had any corrections officer been sued, it is virtually certain that the complaint would have been dismissed as against him/her on the ground of qualified immunity, since the unusual fact pattern would not have led a reasonable corrections officer to believe his actions violated a clearly established right. *See, e.g., House v. City of N.Y.*, No. 18 Civ. 6693 (PAE) (KNF), 2020 WL 6891830, at*17 (S.D.N.Y. Nov. 24, 2020).

### *(b) No constitutional tort is alleged*

There is, however, a second reason why the *Monell* claim against the City of New York must be dismissed. Plaintiffs have not plausibly alleged a viable claim of deliberate indifference to the conditions of their confinement. Put otherwise, Plaintiffs have failed to plausibly allege that any individual employed by the City committed a constitutional tort. That being so, they can assert no viable *Monell* claim against the City.

Plaintiffs allege that the City of New York acted with deliberate indifference to their mental health when its employees at DOCS refused to move them out of the cell block during the six-hour period while the body remained on the floor of the cell block, where the inmates could see it. *See* Dkt. No. 17, at 9. The Complaint does not indicate whether, at the time of the incident, any, all, or none of the thirty-four named Plaintiffs were post-conviction prisoners or pretrial detainees, although an individual plaintiff's status dictates whether his claims arise under the Eighth or the Fourteenth Amendment.[4] The Court will analyze Plaintiff's claims under both frameworks.

To the extent that any of the plaintiffs is a sentenced prisoner, the Eighth Amendment requires corrections officials to take reasonable measures to ensure the physical and psychological safety of convicted prisoners. *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). "The Constitution 'does not mandate comfortable prisons' . . . but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the

---

[4] Plaintiffs' Complaint also purports to rely on the Fourth, Fifth, and Sixth Amendments. Dkt. No. 1, at ¶ 79. There is no fact alleged that would show that Plaintiffs were subjected to an unreasonable search or seizure in violation of the Fourth Amendment, or to violations of the Sixth Amendment's guarantee of a speedy and public trial, so any claim allegedly arising under the Fourth Amendment and Sixth Amendment must be summarily dismissed. As for the Fifth Amendment, its guarantee that no person shall be deprived of life, liberty, or property without due process of law applies to the states only through the Due Process Clause of the Fourteenth Amendment, *Blandon v. Capra*, No. 17-CV-65 (KMK), 2017 WL 5624276, at *12 n. 2 (S.D.N.Y. Nov. 20, 2017) so to the extent that a deliberate indifference claim could arise under the Fifth Amendment, it is coterminous with the Plaintiffs' claims under the Eighth and/or Fourteenth Amendments.

conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). To be liable for violating a prisoner's Eighth Amendment rights, the plaintiff must allege facts that show that "(1) objectively, the deprivation the [detainee] suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to [detainee] health or safety, which includes the risk of serious damage to 'physical and mental soundness'" *Darnell*, 849 F.3d at 30 (2d Cir. 2017) (citations omitted).

"While there is no 'static test' to determine whether a deprivation is sufficiently serious," the Second Circuit has reiterated that "the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and duration." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015). The Second Circuit has rejected a "bright-line durational requirement for a viable unsanitary-conditions claim," and has explained that "[t]he severity of an exposure may be less quantifiable than its duration, but its qualitative offense to prisoner's dignity should be given due consideration." *Id.* at 31. "Defendant[][] cannot overcome Plaintiff's claim for unconstitutional conditions of confinement solely on the ground that the conditions lasted only a limited period of time," *Perkins v. Presley*, No. 18 Civ. 3590 (MKV), 2022 WL 769339, at *7 (S.D.N.Y. Mar. 14, 2022) (emphasis added).

Although the challenged condition here does not squarely fall under the exact scope of an unsanitary conditions of confinements claim, it can be most closely analogized to such a claim, and the Second Circuit has applied the same analysis to similar types of challenged conditions. *Id.* (citing *Willey*, 801 F.3d at 68–69). I conclude it is the appropriate analysis to use here.

The only thing that allegedly presented an excessive or serious risk to the Plaintiffs' mental health is the failure, by unnamed prison officials, to move them out of their Unit for six hours while another inmate's dead body lay within their view, halfway in and halfway out of his cell. Dkt. No. 17, at 9. Although this incident was undoubtably distressing, its duration was so brief that it does not rise to the level of a constitutional violation. Cases dealing with exposure to other distressing incidents in jails make that abundantly clear.

In *Singleton v. City of New York*, No. 20-CV-8570 (ALC), 2022 WL 46200174, at *6 (Sept. 30, 2022), for example, my colleague Judge Carter dismissed a conditions of confinement claim where the plaintiff alleged that he was transported on a bus littered with urine and fecal matter for an unspecified number of hours without adequate ventilation. The case was dismissed because, while the conditions pleaded were disgusting, their duration and severity of these disgusting conditions did not rise to the level of the conditions of confinement claims the Second Circuit has recognized as constitutional violations.

Similarly, in *Myers v. City of New York*, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *6 (S.D.N.Y. Aug. 29, 2012), my colleague Judge Engelmayer found that plaintiff's allegation that he was left in a cell with a urine and filth-laden floor for sixteen hours did not amount to a constitutional violation. In *Evans v. Fogg*, 466 F.Supp. 949, 950 (S.D.N.Y. 1979), the court found that plaintiff's allegations that his cell was filthy and contained mice feces for a period of 24 hours was too brief to amount to cruel and unusual punishment. In *Flores v. City of New York*, No. 21-CV-1680 (PGG) (KHP), 2022 WL 4705949, at *4, 15 (Aug. 8, 2022), Magistrate Judge Parker concluded that plaintiff's allegations of being held in a cell with fecal matter on the wall and in the sink for 24 hours, was a "single, short exposure" that did not qualify as "objectively sufficiently serious to state a claim for constitutional violation under existing case law." And in

*Ortiz v. Department of Corr.*, No. 08 Civ. 2195(RJS)(HBP), 2011 WL 2638137, at *8 (S.D.N.Y. 2011), Magistrate Judge Pitman found that plaintiff's exposure to sewage overflow could not sustain a conditions of confinement claim because the total exposure was "probably less than 24 hours."

By contrast, in *Darnell*, plaintiffs succeeded in challenging their conditions of confinement where the plaintiffs experienced the multiple indignities of inadequate sanitation, overcrowding, inedible food, extreme temperatures, and sleep deprivation for a period lasting between 10 and 24 hours. 849 F.3d at 20, 23–26, 37. And in *Willey* v. *Kirkpatrick*, 801 F.3d at 55, 66, the plaintiff's claim survived a motion to dismiss based on his allegations that he was held naked in solitary confinement for one to four weeks and was exposed to human waste and poor ventilation during that period.

The issue is not simply the amount of time but the indignity of the condition to which the plaintiffs were exposed. Courts have found durations as short as a couple of hours sufficient to sustain conditions of confinement claims, but only when the condition deprives the plaintiff of "a minimal civilized measure of life's necessities," such as reasonable safety. *Garcia v. Fischer*, No. 13 Civ. 8196, 2016 WL 297729, at *5. In *Garcia*, for example, Judge Briccetti found that the plaintiffs' allegation that they were exposed to heavy smoke for approximately two hours satisfied the objective prong of a conditions of confinement claim because even the short exposure "pose[d] an unreasonable risk of serious damage to [their] future health." *Id.* (citation and quotation omitted).

Here, the Plaintiffs were not deprived of safety or any of life's necessities (food, air, light, clothing). The sight of part of a body for six hours does not begin to compare with either the temporal scope, personalized nature, or mortal danger of the violations in the cases where a

constitutional violation was successfully pleaded. The risk from keeping the plaintiffs in their cells for six hours while the investigation into the suicide continued does not compare to two hours of smoke inhalation, and or a month in solitary confinement without clothing or adequate ventilation. It feels far more similar to exposure to bodily wastes or sewage – genuinely unpleasant experiences, but not actionable when the exposure lasts for a period as brief as six hours.

To the extent we are dealing with Plaintiffs who are pre-trial detainees (which is likely many, if not all, of the named Plaintiffs), their claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." *Darnell*, 849 F.3d at 29 (citations omitted). A pretrial detainee may prevail in a claim for deliberate indifference when the allegations are sufficient to establish that the prison official "kn[e]w[] of and disregard[ed] an *excessive risk* to inmate health or safety." *Constant v. Prack*, No. 16-cv-3985, 2019 WL 3287818, at 14 (S.D.N.Y. July 19, 2019) (*citing Wilson v. Seiter*, 501 U.S. 294, 308 (1991)) (emphasis added).

Plaintiffs allege that they were exposed to a condition that was likely to cause their mental health to be impacted. They cite to the fact that individuals from "mental health" provided group and individual mental health counseling for approximately two weeks after the incident as proof that unnamed DOCS officials (none of whom has been sued) knew that forcing Plaintiffs to remain in an area where a dead body was visible for six hours presented a mental health risk. Dkt. No. 1, at ¶¶ 70–72.

However, even assuming, *arguendo*, that the mental health treatment they received established that DOCS knew that exposure to the sight of the body for six hours created a risk of some mental health issues, there are no allegations that the risk of long-term mental health

damage from this incident was "excessive." Furthermore, the facts pleaded demonstrate that DOCS officials – understanding that the inmates had been exposed to what was at the very least something very distressing – were not indifferent to the situation, but did something about it. They called in mental health counselors, prescribed psychiatric medication and administered psychiatric care after the incident. This means that whatever risk or mental trauma existed as a result of a very unfortunate situation was not "disregarded." *Id.* ¶ 73.

The situation here is no different than it was in *Rosado v. Herard*, No. 12 Civ. 8943 (PGG) (FM), 2014 WL 1303513, at *7 (S.D.N.Y. March 25, 2014), where my colleague Judge Gardephe – applying the standard for subjective deliberate indifference under the Fourteenth Amendment – concluded that a pretrial prisoner could not sustain a deliberate indifference to mental health claim where he was provided psychiatric medication and treatment while incarcerated. Similarly, in *Jones v. Westchester County*, No. 20-CV-08542 (PMH), 2022 WL 1406591, at *4 (May 4, 2022), my colleague Judge Halpern found that the plaintiff had not satisfied the subjective prong of a deliberate indifference claim where he claimed that the defendant's COVID-19 safety measures were not followed rigorously enough. Here, Plaintiffs not only concede that they received psychiatric care in the weeks following the incident, they allege no facts to suggest that such treatment was either delayed, denied, or insufficient.

Because Plaintiffs' factual allegations are not sufficient to plead a deliberate indifference claim, no underlying constitutional violation is adequately pleaded. The *Monell* claim against the City must be dismissed on that ground as well.

### 3. **The Motion to Dismiss the State Law Claim is Granted**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

This district court routinely dismisses without prejudice state law claims after all federal claims to which they are appended have been dismissed.

Because I have dismissed Plaintiffs' federal claims against the City, I decline to exercise supplemental jurisdiction over any state-law claims asserted against the City in the pleading. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Dismissal of those claims is without prejudice. Of course, if Plaintiffs reassert any state law claims against the City in any court, they will have to plead affirmatively that each of them individually and timely filed the requisite Notice of Claim. *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 61–62 (1984).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss with prejudice.

The time for leave to amend the complaint as a matter of course expired 21 days after the filing of the motion. Fed. R. Civ. P. 15(a)(1)(B). As a result, the Plaintiffs can now file an amended complaint only with leave of court. Fed. R. Civ. P. 15(a)(2). As I can see no conceivable basis on which amendment would not be futile – and this is on the merits, as well as without regard to the issue of exhaustion – I deny Plaintiffs' informal request, made in their brief in opposition and without attaching a proposed amended complaint, for leave to amend in order to assert further claims against the City. Of course, the statute of limitations on a Section 1983 claim has not yet run, so if Plaintiffs believe that they could assert a viable federal constitutional

claim against persons not already sued, they are welcome to try. But the discussion in this opinion will apply equally to such claims.

The Clerk of the Court is respectfully requested to remove Dkt. No. 10 from the Court's list of open motions.

This constitutes the decision and order of the Court. It is a written decision.

Dated: February 7, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL